IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE

In re

Case No. 3:12-bk-33145-SHB

BENNY DEWAYNE EAST
ANGELA MICHELLE EAST
fka ANGELA MICHELLE JONES

                Debtors

MEMORANDUM ON SUPPLEMENTAL REPORT
AMENDING REPORT OF NO DISTRIBUTION AND MOTION TO COMPEL
ABANDONMENT AND EXECUTION OF TRUSTEE'S DEED

**APPEARANCES:**   LAW OFFICE OF MAYER & NEWTON
      John P. Newton, Jr., Esq.
      1111 Northshore Drive
      Suite S-570
      Knoxville, Tennessee  37919
      Attorneys for Chapter 7 Trustee

      MOSTOLLER, STULBERG, WHITFIELD & ALLEN
      Ann Mostoller, Esq.
      Tracey Vought Williams, Esq.
      136 South Illinois Avenue
      Suite 104
      Oak Ridge, Tennessee  37830
      Attorneys for Benny and Ada East

**SUZANNE H. BAUKNIGHT**
**UNITED STATES BANKRUPTCY JUDGE**

Central to the dispute before the Court is a one-acre, unimproved lot that is property of the estate co-owned by the Trustee and Debtor-husband's parents, Benny and Ada East (the Easts).[1] The Property adjoins the Easts' 19.5 acres on which they live. It became property of the estate after the Trustee brought an adversary proceeding against the Easts for fraudulent conveyance following discovery by the Trustee that Debtor-husband and Mr. East, who had co-owned the property since 1992, had quitclaimed the property to the Easts on March 8, 2012, less than five months before Debtors filed this Chapter 7 case. The Easts settled with the Trustee by quitclaiming a one-half interest in the Property to the Trustee by deed dated August 1, 2014. After he was unable to secure the Easts' consent to jointly list the Property for sale, the Trustee brought a second adversary proceeding against the Easts and obtained a default judgment authorizing him to sell the Property, including the Easts' ownership interest, free and clear of claims or interest of the Easts. The Easts now oppose the Trustee's attempt to amend his report of no distribution to reserve the Property for future administration, and they ask the Court to compel the Trustee to abandon the Property as burdensome or of inconsequential value to the Estate.

Specifically, before the Court are the following: (1) Supplemental Report Amending Report of No Distribution (Supplemental Report) filed by the Chapter 7 Trustee, John P. Newton, Jr., on May 31, 2016 [Doc. 61], seeking to amend the Chapter 7 Trustee's Report of No Distribution (Report) filed on May 18, 2016 [Doc. 60], to "except/reserve" the estate's one-half interest in the Property; (2) the Objection to the Supplemental Report filed by the Easts on June 3, 2016 [Doc. 62]; and (3) the Motion to Compel Abandonment and Execution of Trustee's Deed (Motion to Compel) filed by the Easts on July 25, 2016 [Doc. 72], asking the Court to order the

---

[1] The property is located on Benny East Road, Rockwood, Tennessee, and is identified by Roane County as tax parcel 61.02, map 084 (the Property).

2

Trustee to abandon the Property as burdensome and of inconsequential value to the bankruptcy estate and requesting the Court to order the Trustee to execute a trustee's deed in favor of the Easts.

The parties identified the following issues for trial held on November 3, 2016:

1. whether the Easts have standing to assert any relief in their Motion to Compel and/or their Objection to the Supplemental Report;

2. whether the Trustee can except/reserve an asset in a report of no distribution; and

3. whether the estate's one-half interest in the Property is burdensome and of inconsequential value and benefit to the estate whereby it should be abandoned pursuant to 11 U.S.C. § 554(b).

[Doc. 84.]   The record before the Court consists of fifteen exhibits entered into evidence and the testimony of Phillip James (an employee of Roane County GIS Services), Jane Long (a real estate broker and owner of Roane Realty in Rockwood, Tennessee),[2] Tony Brown (the deputy road superintendent for Roane County), Benny East, and the Trustee.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

## I.  FACTS

On March 6, 1992, Benny East purchased the Property, which was titled in the name of Benny East and Debtor Dewayne East as tenants in common. [Tr. Ex. 3.]  At that time, the Easts already owned the adjoining acres on which they lived.  Mr. East intended that his son would eventually inherit the Easts' homestead property as well as the adjoining, jointly titled Property. The Easts accessed their land-locked property by an easement that had been deeded to Mr. East's parents in 1956. [Tr. Ex. 12.]  The Easts paid to have a contractor construct a driveway over the easement, and the Easts have maintained the easement.[3]  The easement also provides access to

---

[2] The Court sustained the Trustee's objection under Federal Rule of Evidence 401 to any opinion testimony from Ms. Long concerning the listing value of the Property.

[3] Although the easement is 30 feet wide, the driveway on the easement is only about 11 feet wide.

3

the Property.[4]  The following image is an excerpt from the Roane County tax map admitted as Trial Exhibit 6.



The Property is shown as parcel 61.02, and the Easts' homestead is parcel 92 (the orange rectangles and squares being the Easts' home and outbuildings). The easement that provides access to the Easts' property is highlighed in yellow and represented by the blue dotted line shown on the tax map across the Property and parcel 92.

Mr. East testified that, after owning the Property with his son for twenty years, he realized that he could receive a "greenbelt" tax break if the Property were titled the same as his homestead property.  Thus, on March 8, 2012, less than five months before Debtors filed this case, Debtor Dewayne East quitclaimed his ownership in the Property to his parents. [Tr. Ex. 4.]

Debtors commenced this Chapter 7 bankruptcy case on August 1, 2012.  Pursuant to his statutory duties, the Trustee filed an adversary proceeding against the Easts on May 8, 2014, seeking to avoid the transfer under 11 U.S.C. §§ 547(a) or 548(a)(1)(A) or (B).  After execution

---

[4] The Court makes no determination over whether the easement benefits the Property as a matter of law.

4

by the Easts of a quitclaim deed conveying a one-half interest in the Property to the Trustee on August 1, 2014, the Trustee dismissed the adversary proceeding on August 11, 2014.

Also in August 2014, Roane County reviewed Benny East Road, to which the easement connects, and determined to adjust the length of Benny East Road on the County's road list from a length of .9 mile to .4 mile.[5] Tony Brown, deputy road superintendent for Roane County, explained that the county has conducted a review of the road list over the past four years and has made corrections to many of the roads in terms of length and width. Benny East Road was reviewed in August 2014 and proposed for revision at that time along with approximately thirty other roads, which revision was approved at a meeting of the Roane County Road Committee[6] in April 2015.

According to the Trustee, after efforts to gain the Easts' approval to sell the Property failed, he was required to file a second adversary proceeding on September 22, 2014, seeking approval of a sale of the Property under 11 U.S.C. § 363(h). The Trustee obtained a default judgment against the Easts entered on February 6, 2015, which authorizes the Trustee to sell the Property free and clear of the Easts' interests subject to payment of 50% of the proceeds to the Easts. [Tr. Ex. 19].[7] On March 4, 2015, the Court approved employment of an auctioneer to sell the Property.

---

[5] Although the road list was changed to reduce the length of Benny East Road, supposedly after measurement by Deputy Superintendent Brown, the width of the road, shown on the road list as 10 feet, was not corrected. [Tr. Ex. 10] Deputy Superintendent Brown testified that the driveway serving the Easts' property is a one-lane, 11-foot-wide asphalt driveway in need of repair, while the portion of Benny East Road that is now shown on the road map as .4 mile long is a two-lane road, certainly wider than 11 feet. No explanation was provided as to why the width was not corrected when the length was changed.

[6] Mr. East is a member of the Roane County Road Committee and a Roane County Commissioner.

[7] The Easts were initially served with the summons and complaint in late September, and following the filing of an amended complaint, they were served again in mid-November.

On March 20, 2015, the Executive Director of the Roane County Emergency Communications District E-911 issued a letter "to whom it may concern" setting forth the parameters of Benny East Road as starting "at the intersection of Spring City Hwy. also known as US Hwy 27, and end[ing] at the intersection [*sic*] Stanley Lane." [Tri. Ex. 11, Ex. F.] The Easts' counsel sent the letter to the Trustee. Six days later, the Roane County Road Superintendent wrote a letter "to whom it may concern," saying:

> *After being approached with a concern about Benny East Road* in Rockwood, TN there seems to be an error on the list of county maintained roads handed down from the previous administrations. The current list shows Benny East Road in the 5th District to be .9 of a mile. After measuring the county maintained portion, I believe it to be .4 of a mile with [*sic*] remaining .5 appearing to be a private drive leading to one home.
>
> . . . .
>
> Since taking office as Roane County Road Superintendent on September 1, 2012 I have not, nor do I intend to maintain the .5 of a mile I believe to be a private drive.
>
> We are currently working to resolve any discrepancies on the current list of county maintained roads.

[Tr. Ex. 11, Ex. G.] The Superintendent's letter was also sent by the Easts' counsel to the Trustee.[8] Notwithstanding this reference to being approached about the issue, on direct examination, Mr. East, who is both a Roane County Commissioner and a member of the Roane County Road Committee, denied contacting anyone about the mileage of Benny East Road.

The Trustee filed his Report on May 18, 2016. After he was asked by counsel for the Easts to execute a trustee's quitclaim deed transferring the estate's interest in the Property to the Easts, the Trustee realized that the Report had been improperly filed without reserving the

---

[8] Indeed, the Easts' Motion to Compel acknowledges the extensive efforts of the Easts to convince the Trustee that the Property was not marketable: "Prior to and since the signing of the Quit Claim Deed on August 1, 2014, Benny and Ada East, through counsel, have provided the Trustee with multiple pieces of information stating the property is of no value to the estate and is landlocked and cannot be sold without obtaining an easement for road access." [Doc. 72.]

6

Property as an asset of the estate. The Trustee explained that the error was caused by the software for filing the reports. To remedy the error, on May 31, 2016, *i.e.,* less than two weeks after filing the initial Report, the Trustee filed his Supplemental Report, stating the following:

> I, John P. Newton, Jr., Trustee, except/reserve the following asset of the estate from abandonment:
>
> *1/2 interest in lot on Benny East Rd., Rockwood, TN
>
> This asset has NOT been fully administered, and if, at any point in the future, I believe this asset to be of value to the estate, I will seek to reopen the bankruptcy (if applicable) and administer said asset. No other terms of the Report of No Distribution filed May 18, 2016 are modified by this Supplemental Report.

[Doc. 61; Tr. Ex. 15].

The Easts objected to the Supplemental Report on June 3, 2016, and following an initial hearing on the objection, moved to compel abandonment on July 25, 2016.

Although the 1956 easement owned by the Easts is of record in Roane County, the Trustee's on-line searches did not discover it. Nor, apparently, did the auctioneer employed by the Trustee discover the easement. The Trustee testified that he was unaware of the easement until ten days before trial of this matter, when the parties exchanged proposed exhibits. Thus, the Trustee's desire to market and sell the Property before discovery of the easement was affected by the perceived lack of access to and the estate's co-ownership of the Property with the Easts. The Trustee sought to reserve the Property, however, because he believed that the issue might be resolvable within the next few years.

Simply, by the Supplemental Report, the Trustee seeks to reserve the estate's interest in the Property, which he asserts has a fair market value between $9,000.00 and $20,000.00, in the event that access can be established. The Trustee notes that a value of $9,000.00 is shown on the August 2014 quitclaim deed (transferring one-half interest in the Property) as noted by the Roane County Register of Deeds for purposes of transfer tax determination.

7

Through their Objection to the Supplemental Report, the Easts disagree that the Trustee has the right to reserve or except the Property from the Report by the Supplemental Report. Through their Motion to Compel, the Easts seek abandonment of the Property by the estate, based on the fact that it is land-locked and because of the Trustee's failure to market and sell the Property during the last two years.[9] The Easts also ask the Court to compel the Trustee to execute a trustee's deed relinquishing the estate's one-half interest in the Property to the Easts.

## II. CONCLUSIONS OF LAW

When Debtors commenced their case, their bankruptcy estate, consisting of "all legal or equitable interests of the debtor[s] in property as of the commencement of the case[,]" was created. 11 U.S.C. § 541(a). Under 11 U.S.C. §§ 323(a) and 704(a)(1), the Trustee became the representative of Debtors' bankruptcy estate and succeeded to all interests in property of the estate. He also inherited the authority to use property of the estate for the best interests of creditors, including the statutory responsibility to abandon property as follows:

> (a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.
>
> (b) On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.
>
> (c) Unless the court orders otherwise, any property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.
>
> (d) Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate.

---

[9] Although the Easts argue in their Motion to Compel that the Trustee failed to market or sell the Property for two years, the Trustee has only had the Court's permission to sell the Property since entry of the default judgment in February 2015, after which he moved expeditiously to employ an auctioneer, which was approved on March 4, 2015, less than 17 months before the Easts filed their Motion to Compel.

11 U.S.C. § 554.

### A. STANDING

The threshold issue is whether the Easts are parties in interest and, therefore, possess standing to request abandonment under § 554(b).  Based on the record, the Court finds that the Easts do possess standing as parties in interest to oppose the Supplemental Report and to seek abandonment of the Property under § 554(b).

Although the traditional constitutional requirements represent the mandatory minimum requirements for a party to have standing, Congress can "modify or even abrogate prudential standing requirements, thus extending standing to the full extent permitted by Article III." *St. Paul Fire & Marine Ins. Co.*, 579 F.3d 533, 539 (5th Cir. 2009) (quotation omitted).  In Rule 6007 of the Federal Rules of Bankruptcy Procedure, Congress extended standing to the full extent permitted by Article III to allow any "party-in-interest" to object to a proposed abandonment of property. *See Newport Acquisition Co. No. 1, LLC v. Schiro (In re C-Power Prods., Inc.)*, 230 B.R. 800, 804 (Bankr. N.D. Tex. 1998).  Therefore, in lieu of prudential "bankruptcy standing" requirements, the Easts must satisfy the statutory "party-in-interest" requirement.

The term "party-in-interest" appears in many different sections of the Bankruptcy Code but is not defined in 11 U.S.C. § 101.  The legislative history suggests that the term intentionally was omitted from the list of definitions in § 101 to allow some flexibility in its use. *See In re N. Am. Oil & Gas, Inc.*, 130 B.R. 473, 479 (Bankr. W.D. Tex. 1990), *abrogated on other grounds by Pritchard v. U.S. Trustee (In re England)*, 153 F.3d 232 (5th Cir. 1998).  Specifically, the Bankruptcy Appellate Panel of the Sixth Circuit Court of Appeals has broadly interpreted the term to include any "'party [that] has a "sufficient stake" in the outcome of that proceeding, which can include having a pecuniary interest directly affected by the bankruptcy proceeding.'"

9

*In re Pertuset*, No. 12-8014, 485 B.R. 478, 2012 WL 6598444, at *10 (B.A.P. 6th Cir. Dec. 18, 2012) (quoting *Church Mut. Ins. Co. v. Am. Home Assurance Co. (In re Heating Oil Partners, LP)*, 422 F. App'x 15, 17 (2d Cir. 2011)); *see also Khan v. Regions Bank (In re Khan)*, No. 10-36155, Adv. No. 11-3186, 2011 WL 6179941, at *4 (Bankr. E.D. Tenn. Dec. 13, 2011). Courts, including many in the Sixth Circuit, have found that the term "party in interest" includes the following:

> First, "'[t]he phrase is generally understood to include all persons whose pecuniary interests are directly affected by the bankruptcy proceedings.'" *Morton v. Morton (In re Morton)*, 298 B.R. 301, 306 (B.A.P. 6th Cir. 2003) (quoting *In re Davis*, 239 B.R. 573, 579 (B.A.P. 10th Cir. 1999)). Second, it includes "'anyone who has an interest in the property to be administered and distributed'" in a case. *Id.* (applying this example to distributions under a Chapter 13 plan) (quoting *In re Davis*, 239 B.R. at 579). Third, a party in interest may also be "anyone who has a practical stake in the outcome of a case, and those who will be impacted in any significant way in the case." *Id.* at 307 (quotation marks and citations omitted). Last, "anyone who has a legally protected interest that could be affected by a bankruptcy proceeding is entitled to assert that interest with respect to any issue to which it pertains." *In re James Wilson Assocs.*, 965 F.2d 160, 169 (7th Cir. 1992).

*In re RnD Eng'g, LLC*, 556 B.R. 303, 311 (Bankr. E.D. Mich. 2016).

Without question, the Easts have an interest in the Property, thus meeting at a minimum the second and fourth categories of persons qualifying as parties in interest. Because they have "a clear interest in the real property," the Easts are parties in interest authorized to seek abandonment as contemplated by § 554. *See, e.g., In re Crouch*, 80 B.R. 364, 366 (Bankr. W.D. Va. 1987).

### B. THE TRUSTEE'S AUTHORITY TO RESERVE ADMINISTRATION OF THE PROPERTY

The Easts argue that because no party in interest objected within thirty days to the Report filed on May 18, 2016, the Trustee is bound by the presumption that an estate has been fully administered as provided by Rule 5009(a) of the Federal Rules of Bankruptcy Procedure. While the Court agrees that a presumption arises under the terms of Rule 5009(a), the Court disagrees

with the Easts' argument for either of the following possible interpretations of the effect of the Supplemental Report.  First, the Supplemental Report filed by the Trustee constituted an amendment of the Report, well within the thirty-day objection period before the presumption could arise.  Alternatively, the Supplemental Report constitutes a rebuttal of the Rule 5009(a) presumption.  *See In re Schoenewerk*, 304 B.R. 59, 64 (Bankr. E.D.N.Y. 2003) (holding that the Rule 5009(a) presumption was rebutted when the trustee withdrew his no-asset report to administer the debtors' residence when the debtors listed the property for sale at substantially well in excess of the scheduled value).  Here, the Supplemental Report, which was filed on May 31, 2016, clearly was filed within the thirty days provided by Rule 5009(a), and it expressly amends the Report and states that the Property "has NOT been fully administered." [Doc. 61.]

The Easts also argue that the Trustee has no authority to file a no-asset report that excepts or reserves an asset of the Estate.  Such an argument flies in the face of the Code.  Section 554(d)[10] expressly acknowledges that property not abandoned, and thus not administered in the case, remains property of the estate.  Accordingly, the Court finds that the Trustee was within his authority to amend the Report to expressly reserve administration of any asset included within Debtors' estate, including the Property, and he has done so through the Supplemental Report. *Cf. Gray v. City of Decatur (In re Gray)*, 394 B.R. 900, 902 (Bankr. C.D. Ill. 2008) (referencing a notice of partial abandonment); *Barber v. Maulsby (In re Integrated Agri, Inc.)*, No. 01-84536, Adv. No. 03-8261, 2007 WL 647300, at *5 (Bankr. C.D. Ill. 2004) (referencing a notice of partial abandonment); *cf. In re Schoenewerk*, 304 B.R. at 65-66  (upholding the trustee's

---

[10] Section 554(c) provides that, "unless the court orders otherwise," any property that was scheduled by Debtors pursuant to 11 U.S.C. § 521(a)(1) but not administered at the time the case is closed is abandoned to Debtors; however, pursuant to § 544(d), any property that is not scheduled remains property of the estate.  In this case, because the Easts owned the Property at the time of the bankruptcy filing, the Property was not scheduled by Debtors.  Thus, even if the case were closed, the Property would not be deemed abandoned under § 554(c).

11

withdrawal of his no-asset report to administer the debtors' residence when the debtors listed the property for sale at substantially well in excess of the scheduled value).

### C. ABANDONMENT UNDER § 554(b)

In order to prevail in their Motion to Compel, the Easts are required to prove, by a preponderance of the evidence, that the Property is burdensome to the estate or of inconsequential value. *See* 11 U.S.C. § 554(b); *Lancer Ins. Co. v. Guru Global Logistic, LLC (In re Guru Global Logistic, LLC)*, 557 B.R. 842, 844 (Bankr. W.D. Pa. 2016). "An order compelling abandonment is the exception, not the rule [and abandonment] . . . should only be compelled in order to help the creditors by assuring some benefit in the administration of each asset." *Morgan v. K.C. Mach. & Tool Co. (In re K.C. Mach. & Tool Co.)*, 816 F.2d 238, 246 (6th Cir. 1987). When deciding whether to order abandonment, a court generally "will defer to a trustee's decision not to abandon property provided it finds that the trustee made a business judgment, in good faith, upon some reasonable basis, and within the scope of [his] authority." *Guru Global Logistic, LLC*, 557 B.R. at 845 (citing *In re Slack*, 290 B.R. 282, 284 (Bankr. D.N.J. 2003)). Nevertheless, as the party opposing abandonment, the Trustee "must show some likely benefit to the estate; mere speculation about possible scenarios in which there might be a benefit is not sufficient." *Rajala v. Liberty Bank (In re Buerge)*, No. 11-20325; Adv. No. 13-6015, 2013 WL 5656204, at *2 (Bankr. D. Kan. Oct. 15, 2013) (quotation omitted); *see also Kaler v. Nelson (In re Nelson)*, 251 B.R. 857, 860 (B.A.P. 8th Cir. 2000) ("The court need not consider speculative factors when determining whether abandonment is appropriate under Section 554(b) of the Bankruptcy Code."). Accordingly, the question that must be answered is "whether there is a reason that the estate's interest in the property should be preserved or, instead, whether the property is so worthless or burdensome to the estate that it should be

Case 3:12-bk-33145-SHB  Doc 92  Filed 11/23/16  Entered 11/23/16 08:55:12  Desc
Main Document    Page 13 of 14

removed therefrom." *In re Hodges*, No. 06-33078, 2013 WL 1755483, at *2 (Bankr. E.D. Tenn. Apr. 24, 2013) (quoting *K.C. Mach. & Tool Co.*, 816 F.2d at 246 (citations omitted)).

The Court finds that the Easts have not met their burden of proof on this question. No evidence was presented by the Easts as to the value of the Property. The Trustee, however, presented evidence that the value reported to Roane County pursuant to Tennessee Code Annotated § 67-4-409 was $9,000.00. [Tr. Ex. 5].[11] The Court excluded the Easts' proposed broker's opinion as to the listing value because such is not a proper appraisal of the value of the Property. *See Donoway v. Tucker (In re Donoway)*, 139 B.R. 156, 158 (Bankr. D. Md. 1992) ("Real estate brokers and agents without specialized training in real estate appraising are not qualified to testify as to their opinions regarding fair market value.") The Easts could just as easily have called a qualified appraiser. Even if the broker's opinion had been accepted by the Court, however, it was based on the broker's understanding that the Property is wholly inaccessible by road, a proposition that has since been discovered to be questionable. Nor did the Easts present evidence that the Property is burdensome to the estate.

Instead, the evidence established the Trustee's recent discovery of the easement (curiously not disclosed by the Easts to the Trustee given their ongoing efforts to convince him that the Property is inaccessible[12]) and the existence of legal questions concerning whether, under state law, the easement benefits the Property given the fact that the owners of the easement also owned the Property under the March 2012 deed and that they currently own a one-half

---

[11] The Easts dispute whether the $9,000.00 value is full or half value. Even if half value, the Court does not find that $4,500 is inconsequential under § 554(b).

[12] Mr. East also testified that a survey was completed when he purchased the Property in 1992; however, no survey of record could be located by the Trustee, nor was one provided by the Easts.

13

interest in the Property.[13] Given these circumstances, even if the Court had admitted the broker's opinion, the Court would still find that the Easts did not meet their burden.[14] Further, under a totality of the circumstances, the Court defers to the Trustee's "business judgment, [made] in good faith, upon [a] reasonable basis, and within the scope of [his] authority." *Guru Global Logistic, LLC*, 557 B.R. at 845.

### III. CONCLUSION

In summary, for the reasons stated herein, the Objection to Trustee's Supplemental Report Amending Report of No Distribution is OVERRULED, and the Motion to Compel Abandonment and Execution of Trustee's Deed is DENIED. An order consistent with this Memorandum will be entered.

FILED: November 23, 2016

BY THE COURT

*/s/ Suzanne H. Bauknight*

SUZANNE H. BAUKNIGHT
UNITED STATES BANKRUPTCY JUDGE

---

[13] The Trustee noted that the default judgment authorizes him to sell the Easts' interest in the Property, and he is of the opinion that he can now market the Property for sale, including a sale of the Easts' real property interest in the driveway access to the Property by way of the easement. The correctness of the Trustee's opinion is not before the Court for determination.

[14] During closing argument, the Easts' counsel raised for the first time a request that the Court at least set a deadline for the Trustee to sell or abandon the Property. Such was not sought in any motion filed with the Court, nor did counsel cite to any provision of law authorizing the Court to set such a deadline. Accordingly, the request for a deadline is denied.